Besta et al., Plaintiffs-Appellees, *v.* Zill et al.,
Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 26137, 26138. Decided June 20, 1963.

*Mr. Franklin A. Polk,* for plaintiffs-appellees.
*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. Sumner Canary,* for defendants-appellants.

Corrigan, J. These two appeals on law and fact are before us from the Court of Common Pleas of Cuyahoga County and it has been stipulated by the parties that the two causes will be consolidated for argument and briefs. The further stipulation was entered into by the litigants that the causes shall be heard in this court upon the transcript of the testimony received in the trial court. Case No. 26137 is the appeal of Leonard Zill and Case No. 26138 is the appeal of Joseph Zill.

Leonard Zill and Joseph Zill, defendants in the court below, as the respective appellants, will be referred to herein as defendants. It should be noted that they are son and father, in the order named. The appellees, plaintiffs below, are Barney Besta and Mary Besta, husband and wife, and will be designated

plaintiffs in this opinion. The defendant, Joseph Pickus, is a brother-in-law of Joseph Zill and the uncle of Leonard Zill.

As disclosed by the evidence, the litigation arises out of a real estate transaction which began on June 7, 1960, with the signing of a land option by defendant, Joseph Zill. In this document, for a consideration of $100.00, paid to him by plaintiff, Barney Besta, Joseph Zill agreed to convey free and clear by warranty deed to Barney Besta or his nominee, a tract of land comprising about 69 acres situated in Solon on Brainard Road for the sum of $50,000.00 cash. This option ran until July 7, 1960, according to its terms.

Then, on June 10, 1960, at the First Federal Savings and Loan Association of Cleveland, Joseph Zill, defendant, entered into an escrow agreement with Barney Besta and Mary Besta, plaintiffs, to convey by warranty deed, the Brainard Road parcel in Solon of approximately 69 acres for $50,000.00 to be paid by the grantees with a down deposit of $1500.00, followed by $23,500.00 in cash to be deposited with the escrow agent, and a note and mortgage from plaintiffs to defendant, Joseph Zill, for $25,000.00, the latter to be paid within one year after June 30, 1960.

Pursuant to this agreement, the defendant, Joseph Zill, deposited his warranty deed with the bank and the funds and other documents were likewise so deposited by plaintiffs. The warranty deed and the mortgage deed, under the terms of the escrow instructions, were to be filed for record when the title could be certified by the title company as being good in the plaintiffs, the Bestas, except for said mortgage to defendant, Joseph Zill. The instruments were sent to the title company by the bank with such instructions and, after an examination of the Cuyahoga County records, the title was found to be clear. On July 7, 1960, the title company filed for record the warranty deed to the Bestas and their purchase money mortgage deed to Joseph Zill.

The claim is made, in connection with the execution of the deed from Joseph Zill to Barney and Mary Besta, bearing date of June 30, 1960, that Joseph Zill could not have signed the deed on such date because he was in the hospital at that time. Defendant argues that this warranty deed is void be-

cause it must have been signed in blank by the defendant on June 10, 1960, and filled in, signed by two witnesses and a notary public on June 30, 1960, but not in the presence of or with the consent of the grantor. We do not feel that the evidence justifies this conclusion. Whatever the date, the evidence is clear that the deed was properly executed, witnessed and acknowledged.

Some few days later and before the disbursement of the funds in escrow, a pre-existing mortgage deed for $44,000.00 on the same parcel of property was discovered in the Cuyahoga County records, which the defendant, Joseph Zill, had executed to Joseph Pickus. It was dated October 1, 1948, and described several parcels of real estate, including the property described in the deed from Joseph Zill to the Bestas. This mortgage was recorded in the office of the Recorder of Cuyahoga County on September 29, 1950. It was assigned by Joseph Pickus, defendant, to Leonard Zill, defendant, on July 15, 1955, and the assignment was recorded on August 10, 1955.

The Bestas, shortly after completing the escrow arrangements for the purchase of the 69 acre Brainard Road parcel, made arrangements to sell the property and the new purchaser deposited $10,000 on the purchase price of $75,000.00 and signed a contract with Besta which obligated him to complete such purchase.

Thereafter on July 27, 1960, the Bestas filed suit against the Zills, Pickus and First Federal in Common Pleas Court. Later an amended petition, alleging two causes of action, was filed, which included Andrew Vavrek, Robert J. Mazanec and Frank G. Voldrich as defendants. The Bestas pray for cancellation of the mortgage of October 1, 1948 for $44,000.00; that title to the property in question be quieted in their names; that $25,000.00 compensatory damages be awarded to them against Joseph Zill for being unable to complete sale of the property which they had arranged; and for certain other relief.

Joseph Zill, in his separate answer and cross-petition, admits that there exists a mortgage to Joseph Pickus for $44,000.00 and the date of execution and that said mortgage was assigned to Leonard Zill. He denies all of the other allegations in plaintiffs' petition.

By way of cross-petition, Joseph Zill alleges that he remains the owner of the property in question; that Barney Besta proposed that he buy some property in Florida, and to raise money for that purpose that cross-petitioner sell to him the 69 acre parcel for $50,000.00 cash; that cross-petitioner agreed to sell this latter property and signed a land option to so sell, whereupon Barney Besta paid cross-petitioner $100.00. It is further alleged therein by Joseph Zill that plaintiffs, on or about June 10, 1960, persuaded him to go to the office of First Federal Savings & Loan Association for the purpose of opening an escrow; that there defendant, Robert J. Mazanec, joined with plaintiffs in persuading cross-petitioner to make out certain documents, the contents of which he does not know, but he was told these documents were necessary in opening up an escrow; that he relied upon the statements of plaintiffs and Robert J. Mazanec in this regard; that after July 7, 1960, he learned that a deed purporting to convey this property had been filed; that defendant, Frank S. Voldrich, prepared such deed from one of the papers which cross-petitioner signed under assurance of defendant, Mazanec, and plaintiffs, that this was an instrument necessary to open up an escrow; that the deed purports to have been executed on June 30, 1960, witnessed by A. J. Vavrek and Robert J. Mazanec and acknowledged by Mazanec, all of which he denies.

Cross-petitioner further avers that on or about June 10, 1960, he was given a draft for $1400.00 to apply on the purchase price of the property; that the property is worth $200,000.00 and he is being deprived of the difference between that figure and $50,000.00 by plaintiffs and defendants, Mazanec, Voldrich and Vavrek.

On a second cause of action, cross-petitioner seeks $10,000.00 damages for expenses he will suffer from acts of plaintiffs and said three other defendants.

For a third cause of action, Joseph Zill asks for $50,000.00 punitive damages.

He prays that the deed of June 30, 1960, be found to have been fraudulently obtained from him; that he never executed a deed to plaintiffs conveying said property; that said deed be declared null and void and of no effect; that plaintiffs be or-

dered to reconvey said property to Joseph Zill and upon failure to do so the decree of the court to act as such conveyance; that the court declare the land option to have been obtained fraudulently and that it is null and void and of no effect.

Denials are entered to plaintiffs' petition and to Joseph Zill's cross-petition by the other parties. Joseph Pickus, defendant, further answers that from 1930 to 1948 he advanced sums of money to Joseph Zill amounting to $44,000.00 which amount is represented by the mortgage which he later assigned to Leonard Zill.

Defendant, Leonard Zill, denies that note and mortgage assigned to him was without consideration. He also cross-petitions praying that the court find him to have a good and subsisting first lien on the premises involved and that there is due to him on the note and mortgage the sum of $44,000.00 with interest from October 1, 1948.

It is the testimony of Joseph Zill that the note and mortgage for $44,000.00 was signed by him in favor of Joseph Pickus on October 1, 1948, for money which was loaned to him by Pickus over a period of years. The notary, who acknowledged Joseph Zill's signature to the mortgage deed, testified that such signature and acknowledgement to the deed was made on October 1, 1948. This testimony is obviously not worthy of belief. The notary, John M. Bean, was the Vice-President and General Manager of the Harvard Lumber Company. He joined the company in 1930 and retired in 1955. The two witnesses whose signatures appear on the mortgage were employees of the Harvard Lumber Company. Joseph Pickus was a long-time salesman for the Harvard Lumber Company. Joseph Zill had been in the sash and door business for a number of years and later in the real estate business; Joseph Pickus at one time was in the business of making extensive construction loans; the mortgage deed was made out and signed at the office of the Harvard Lumber Company.

The acknowledgement on this mortgage deed for $44,000.00 by John M. Bean was allegedly made on October 1, 1948. However, under the notary's signature is stamped the notary's name and the date when his commission expires. On the deed, plaintiffs' exhibit 3, the date appears "Nov. 16, 195-" and the last figure is obliterated. On plaintiffs' exhibit 5, which is a

photostatic copy of the mortgage deed made at the time it was recorded, September 29, 1950, the date on the notary's stamp is clearly shown as November 16, 1952. Further, the Cuyahoga County records, as evidenced by plaintiffs' exhibit 2, show that J. M. Bean was commissioned a notary public by the Governor of Ohio for a term of three years commencing on November 17, 1949, and this commission was signed by the Governor on September 15, 1949, and registered in the office of Clerk of Courts on September 19, 1949. Obviously, this was a renewal of a notary's commission expiring on November 16, 1949. It is most unlikely that the notary would be using a stamp on October 1, 1948, evidencing the date of the expiration of this commission as November 16, 1952. Patently, he was exercising the authority of a notary under a prior commission. Quaere: why would he have such a stamp on October 1, 1948, when it did not cover the period of his notary's commission at that time? It is clear to this court that the notary did not acknowledge the signature on that date although Joseph Zill may have signed the mortgage deed on that date. The testimony of these two experienced business men, Pickus and Joseph Zill, was that the former loaned to the other over a long period of years certain sums of money. They totaled up these approximate sums and Joseph Zill executed the note and mortgage for $44,000.00. Neither of these two experienced business men remember any date or any particular amount loaned, nor was there any written evidence of any alleged individual loan which went to make up the $44,000.00.

It is noteworthy at this point to recall that this mortgage was filed for record on September 29, 1950, two years after the alleged signing, and it is reasonable to conclude that it was at that time the notary's signature was obtained and the expiration date of the notary's commission stamped on the mortgage.

We so find these to be the clearly established facts and, therefore, because this was a defectively executed mortgage, it did not establish a lien with priority over subsequently recorded deeds or mortgages. *Citizens National Bank* v. *Denison*, 165 Ohio St., 89, 133 N. E. (2d), 329.

Defendant argues that the *Denison case* has no application here because the evidence proves that the mortgage deed

by Joseph Zill to Joseph Pickus was signed and witnessed on a certain date and acknowledged by the grantor before a notary public at a later date. A careful review of the evidence, however, clearly indicates that the acknowledgement did not take place as claimed by the defendant. This mortgage is void because the requirements for its proper execution were not met.

In searching for a probable reason for the effort on Joseph Zill's part to encumber this parcel of real estate, it should be remembered that the evidence establishes he was first married to Fanny, the sister of Joseph Pickus, and they were divorced in 1938, leaving children; that some time afterward Joseph Zill married one Rebecca who died shortly thereafter; that he then had a child by a younger female, named Margaret, and he married her after the child was born. Considering that Joseph Zill had extensive experience in business, and in real estate particularly, and that his brother-in-law, Joseph Pickus, was equally experienced, the $44,000.00 mortgage was signed with the probable intention of protecting Zill's children in case anything happened to Zill in that period during which the liaison was developing with the person who later became his third wife. There is significance in the fact that the mortgage, dated October 1, 1948, was not placed on record until September 29, 1950, just three or four days before he did marry his third wife, Margaret.

During the period 1950 to 1962, the evidence reflects that defendant, Leonard Zill, gave or loaned to his father, Joseph Zill, $42,000.00 in cash. This would account for the uncle, Joseph Pickus, assigning the mortgage to Leonard Zill on July 15, 1955.

It is our decree and judgment in Case No. 26138, after a careful review of the record, that the mortgage of $44,000.00 is invalid, as being defectively executed and having been given without consideration, as against the bona fide purchasers of the property, Barney Besta and Mary Besta, and that title of Barney Besta and Mary Besta to said property should be quieted as against said mortgage and Joseph Pickus or anyone else holding the mortgage through him and that said mortgage be canceled as of record.

It is further our decree and judgment in this appeal that the amended petition of plaintiffs against Frank Voldrich, Andrew Vavrek and Robert J. Mazanec be dismissed.

As to the money damages prayed for against Joseph Zill in the second cause of action in the amended petition, our finding is in favor of Joseph Zill and judgment is rendered accordingly.

As to the punitive damages prayed for against Joseph Pickus and Leonard Zill in the second cause of action set out in the amended petition, our finding is in favor of Joseph Pickus and Leonard Zill and judgment is rendered accordingly.

Also, in Case No. 26138, the relief asked for in the first cause of action of the cross-petition of Joseph Zill is denied and our decree and judgment is in favor of plaintiffs.

As to the second cause of action in Joseph Zill's cross-petition, in which money damages are prayed for against plaintiffs and Vavrek, Mazanec and Voldrich, in view of our holding on plaintiffs' first cause of action, said second cause of action in Joseph Zill's cross-petition is dismissed.

Concerning the third cause of action in Joseph Zill's cross-petition, in which cross-petitioner prays for money damages against plaintiffs and Vavrek, Mazanec and Voldrich, in view of our holding on plaintiffs' first cause of action, said third cause of action in Joseph Zill's cross-petition is dismissed.

It is our decree and judgment in Case No. 26137 that the mortgage deed for $44,000.00, assigned to Leonard Zill, and recorded in Volume 7192, Page 148 of Cuyahoga County Recorder's Office, is void and of no effect, and that title is quieted in plaintiffs as against such mortgage assigned to said defendant. Defendant Leonard Zill's prayer in his cross-petition to find that he has a good and subsisting first lien on the Brainard Road real property is denied and this is our decree and judgment and his prayer that there is due him the amount of $44,000.00 with interest on such note and mortgage is denied and such is our decree and judgment.

Order see journal.

Hurd, P. J., Silbert, J., concur.